Rosario Cintrón de Capó, Plaintiff and Appellee, v. A. Hartman & Co., Defendant and Appellant.

No. 5133. Argued May 9, 1930.—Decided March 10, 1932.

*Tous Soto & Zapater* for appellant. *José A. Poventud, Alberto S. Poventud, F. Parra Capó,* and *E. Capó* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This appeal deals with the authority vested in the courts to correct their own judgments and with the question of whether or not the District Court of Guayama properly exercised its power to correct, as it did correct, a prior judgment which it had rendered.

It seems advisable to state that the appellee has filed a motion to dismiss the appeal on various grounds which she extensively argues in her brief. Perhaps she is right, but as from the opinion we have formed of the case the order appealed from should be affirmed, we prefer to base our decision on the merits of the question itself as submitted to the district court and decided by it.

In 1918 Rosario Cintrón brought suit in the District Court of Guayama against the partnership, A. Hartman & Co., for the performance of a contract. Three properties were described in the complaint: one of 288 acres (*cuerdas*) (Hacienda Caimital), another of 42 acres, and still another of 10 acres, as belonging to the plaintiff; also three other properties of 246 acres (Hacienda Olimpo), 80 acres, and 50 acres, respectively, as belonging to the defendant.

The identical properties are described in the contract, the subject of the litigation, entered into by public deed executed in 1917, whereby it was agreed that as the said properties had all common boundaries and there being differences as to such boundaries, a survey of the properties should be made, both as a whole and as separate estates, and surveyor Celso Caballero was designated by common consent to do this work. In the event a surplus resulted, the same was to be distributed pro rata between the parties.

It was further alleged in the complaint that the survey agreed upon was carried out with the following result:

"DIFFERENCES IN AREAS OF PLAINTIFF'S PROPERTIES

|  | Registry of Property | Survey |
|---|---|---|
| Property No. 1 | 288 acres | 293.90 acres |
| Property No. 2 | 42 acres | 37.46 acres |
| Property No. 3 | 10 acres | 12.75 acres |
| Road over the properties |  | 2.00 acres |
| Total | 340 acres | 346.11 acres |

" *      *      *      *      *      *      *

"DIFFERENCES IN AREAS OF DEFENDANT'S PROPERTIES

|  | Registry of Property | Survey |
|---|---|---|
| Property letter 'A' | 246 acres | 259 acres |
| Property letter 'B' | 80 acres | 80 acres |
| Property letter 'C' | 25 acres | 23.96 acres |
| Total | 351 acres | 362.96 acres" |

It was finally alleged that the defendant refused, in disregard of the agreement, to recognize the plaintiff as the owner of the three properties described and to distribute the excess, and prayer was made for a judgment containing the following pronouncements:

"1. That the plaintiff is the owner of the properties described in the second paragraph of the complaint, with the single alteration that the property marked No. 1 has only 288 acres instead of 300 acres.

"2. That the plaintiff is entitled to the ownership of a share in the excess of 18.07 acres proportionately to the area of her properties and that of the defendant's estates.

"3. That the defendant shall reimburse the plaintiff for all the costs, expenses, and attorney's fees incurred by her by reason of the present litigation."

The defendant answered, admitting some of the facts and denying others, and in addition it filed a cross complaint

against the plaintiff praying for a judgment with the following pronouncements:

". . . that the contract for a survey, which is the basis of this litigation, be declared null and of no force or effect whatsoever; similarly as to the records made in the registry of property in favor of the plaintiff of the 42-acre property marked No. 2 in the third paragraph of the complaint, and as to the 38 acres appearing as an excess over the area of the property marked No. 1 in the second paragraph of the complaint, with a declaration that the said tracts of 42 and 38 acres belong exclusively to the defendant; and lastly that the complaint be dismissed and plaintiff adjudged to pay the costs, expenses, and attorney's fees incurred by the defendant, . . ."

The case went to trial and considerable evidence, both oral and documentary, was introduced, including several maps and reports from experts. Finally the district court decided the case by a judgment which contains the following pronouncements:

"(a) That the contract made between the parties is valid and should be complied with according to its contents;

"(b) That the plaintiff and the defendant are the owners, respectively, of the properties shown by their titles; the properties of the plaintiff having an area of 340 acres, and those of the defendant an area of 351 acres, making a total, according to their titles, of 691 acres;

"(c) That the survey made of the properties showed a total area of 709.07 acres;

"(d) That in accordance with the said contract, the defendant is adjudged to divide with the plaintiff the excess of 18.07 acres in proportion to the area of their properties as shown by their titles.

"(e) That, as the allegations of the cross-complaint have not been duly proved, the court dismisses the same without prejudice to the rights of the party to defend in any other action.

"(f) The defendant is adjudged to pay to the plaintiff the costs and attorney's fees."

The judgment is based on a lengthy opinion, one of the first paragraphs thereof reading partly as follows:

"The plaintiff entitles her action one for the performance of a contract. However, if we examine the pleadings we find that she

seeks to obtain from the court a declaration of ownership as to the properties in controversy and prays for the delivery of certain parcels of land.''

On appeal to this Court, that judgment was affirmed. (33 *Decisiones de Puerto Rico,* pp. 1070–1073—*Per Curiam* Dec.)\* One of the findings (*Por Cuantos*) made by this Court in the cited decision is as follows:

''WHEREAS, this appeal having been heard with the appearance of counsel for the parties, and the record and the briefs having been examined, and after an extensive discussion of the case by the members of the Court in conference, a majority of the Court is of the opinion that the first ten errors assigned are nonexistent, inasmuch as the complaint is sufficient; there is no misjoinder of causes of action; according to the evidence the contract made between the parties on September 8, 1917, tended to and did solve differences that had long existed, the parties acting therein with full knowledge of the facts; upon the survey being made as agreed, the area of the properties turned out to be sufficient to cover the acreage described in the titles, leaving a surplus of a few acres; and it being impossible validly to maintain that the lower court erred, as claimed by the appellant, in failing to hold that the plaintiff's title to the 42-acre parcel and to the excess in area of the Hacienda Caimital is ineffective since it involves the same eighty acres previously sold by the plaintiff's ancestor to the defendant's predecessor in interest.''

An appeal was taken to the United States Circuit Court of Appeals for the First Circuit which affirmed the judgment of this Court. (12 F. (2d) 649–652.) In its opinion the Circuit Court said, in short, that the District Court of Guayama and the Supreme Court of Puerto Rico considered the suit as a proceeding to try title, the issue involved being the title to the tracts of 42 and 38 acres which was determined in favor of the plaintiff. Referring to a certain reservation of rights, assigned as error by the appellant, made by the trial court in dismissing the cross complaint, the Circuit Court stated that it clearly appeared that the title to the 80 acres was tried and determined in the plaintiff's favor by both Insular Courts,

---

\* NOTE.—Not reported in the English edition of these Reports.

the judgments resting on the validity of the titles, and the gist of the case being that there was a question of fact as to the title to said land which was apparently then in the appellant's possession.

The defendant and appellant was not satisfied with that decision. It petitioned the Circuit Court for a rehearing on the ground that its conclusions had gone beyond the issues involved in the litigation and determined by the insular courts, by deciding the question relative to the ownership titles; and it suggested that the proper judgment was one remanding the case for a determination of the cross complaint of the appellant or reversing the judgment of this Court as not supported by the pleadings, leaving the plaintiff at liberty to bring a new action for revendication. The Court denied the rehearing sought.

Upon the case being remanded to this Supreme Court, the mandate was forwarded to the District Court of Guayama, whereupon a motion was filed for the correction that has given rise to the present appeal. The correction was decreed in the following terms:

"(B).—Let the Clerk of this Court supply the omission which exists in the judgment rendered herein by this Court on September 27, 1921, and which consists in the failure to describe the three prop- . erties having an area of 340 acres that were acknowledged as belonging to Rosario Cintrón Sánchez, by inserting the description of said properties in the said judgment as the same appears in this order; and let the Clerk transcribe again the said judgment, *nunc pro tunc*, in the regular Judgment Book of this Court; and

"(C).—Once the judgment of this Court of September 27, 1921, is amended, let a writ of possession or order for the execution of the said judgment, as affirmed by the said superior courts, be issued to the Marshal of this Court, and let the plaintiff be given possession of the 80 acres acknowledged as belonging to her ancestor, Rosario Cintrón Sánchez, that is, the 42-acre tract and the larger property of 288 acres, more or less, known as Caimital, and both described in this order, after segregating from the latter property the 248 acres, more or less, sold by Rosario Cintrón Sánchez to Marcelo J. Oben by a deed executed in Ponce on December 31, 1923, before Notary

Francisco Parra Capó, such segregation being described in the said deed as follows: '' . . . .

The foregoing would be sufficient, in our judgment, for affirming without further reasoning the order appealed from; but the appellant has filed a brief assigning seventeen errors and it seems advisable to state here, if only briefly, why we think that the same are nonexistent.

The first eight errors may be considered together. By them it is urged that the court erred in holding that there was an omission in the judgment and that it was thereby adjudged that the three properties belonged to the plaintiff; that a clerical error was involved; that the failure to describe the properties was due to inadvertence. It is also urged that the court lacked jurisdiction in the premises after the lapse of seven years, and after the judgment had been affirmed on appeal; that the court erred in declaring that the complaint had been sustained by the judgment without any limitation whatever; in holding that the set phraseology of the mandate of the Circuit Court of Appeals empowered it to correct the alleged omission; and in not holding that if the description of the properties was necessary, the omission thereof operated to avoid the judgment or at least to render its execution impossible.

According to subdivision 8 of section 7 of the Code of Civil Procedure, every court has power to amend and control its process and orders so as to make them conformable to law and justice.

The jurisprudence on this point is quite abundant. In *Marvin & Jones, Inc.,* v. *Torres et al.,* 19 P.R.R. 46, where several cases from continental courts are cited, it was held that: ''The courts of Puerto Rico have the power to amend their judgments and decrees in any manner within the term in which the same were rendered, and after the expiration of the term when the motion to amend is made within the term and remains pending after said term, or when the amendment sought is to correct a clerical error.''

Said clerical errors may be corrected even after an affirmance of the judgment on appeal. *Fallon* v. *Brittan,* 84 Cal. 511–514; *Lawton* v. *Rodríguez,* 41 P.R.R. 452.

The description of the properties, which has been inserted in the judgment amended *nunc pro tunc,* unequivocally appears not once but several times in the record. Said properties were referred to in the original judgment. The correction made consists only in inserting in the judgment a full description in accordance with the contents of the record. Such an omission may be considered as a clerical error. If the clerk had been careful, he would have described fully the properties when entering the judgment, by following the opinion rendered by the judge.

The case of *Rivera* v. *The People,* 16 P.R.R. 731, is not in point. There, no error was sought to be amended. Here, the appellant did not invoke in its favor the error and the appellee moved in time for its correction and obtained it. A refusal of the correction in the present case would really have amounted to a refusal to make the judgment conform to law and justice.

The time elapsed is immaterial. Throughout that period, the case was being prosecuted with the attention of the parties centered upon fundamental questions. Moreover, there are adjudicated cases where corrections have been decreed after the lapse of a longer period than that involved in the present case. *Frink* v. *Frink,* 43 N. H. 508, 80 Am. Dec. 189.

By the 9th, 10th, 11th, and 14th assignments it is maintained that the court erred because it had no jurisdiction to order that the plaintiff be put in possession of the tracts of 43 and 38 acres, or to grant to the plaintiff a relief not prayed for by her in her complaint; and because even if it had jurisdiction the court exceeded the same in acting as it did.

We think that the court had also power to amend its judgment by inserting therein an order for possession. Perhaps

this was unnecessary, as section 64 of the Code of Civil Procedure expressly provides:

"Sec. 64. In an action brought by a person out of possession of real property, to determine an adverse claim of an interest or estate therein, the person making such adverse claim and persons in possession may be joined as defendants, and if the judgment be for the plaintiff, he may have a writ for the possession of the premises, as against the defendants in the action against whom the judgment has passed."

To assert that it had not been finally determined who was the owner of the properties in accordance with the titles which served as a basis for the agreement and the survey, is to shut one's eyes to the evidence. Rightly or wrongly, justly or unjustly, the question was finally determined by three courts and such determination is not academic. It was rendered to be really effective.

By the 12th assignment the appellant insists that the order of the court is erroneous because it fails to describe the excess relating to the Caimital plantation. It seems advisable to transcribe the following from the brief of the appellee in reply to that assignment:

". . . the first judgment in the main action rendered by the District Court of Guayama on September 27, 1921, among other particulars, acknowledged as belonging to the plaintiff, Rosario Cintrón Sánchez, a certain land with an area of 340 acres, that is, the tracts of 288 (Caimital), 42, and 10 acres, (Rec., Sup. Ct., pp. 51–68; Rec., C.C.A., pp. 31–42), the only three properties which the plaintiff claimed and described in her complaint (Rec., Sup. Ct., pp. 2–3, 9 top; and it was likewise stated that surveyor Caballero, appointed by both parties to the action to draw the map and make the necessary survey, found enclosed within the perimeter the six properties of the parties and sufficient land to cover their respective areas, there also being a surplus (Rec., Sup. Ct., pp. 51–68; Rec., C.C.A., pp. 31–42).

"An appeal having been taken by A. Hartman & Co., the Supreme Court of Puerto Rico and the Circuit Court of Appeals narrowed the controversy 'to the tract of 42 acres and to the excess (38 acres) of the Caimital plantation,' it being declared that the same, that is, a total of 80 acres, belonged to plaintiff Mrs. Cintrón Sánchez (*Cin-*

*trón* v. *A. Hartman & Co.*, 33 *Decisiones de Puerto Rico* 1070–1072, *Per Curiam* Dec.; *A. Hartman & Co.* v. *Sánchez*, 12 F. (2d) 649, 652).

"In the opinion rendered by the Circuit Court of Appeals the plaintiff's properties are identified by references to their titles, to the map drawn by Caballero, and to the complaint; for that opinion says in part:

" '. . . The record titles of the parties, as recited in this contract, are in the plaintiff: No. 1, the Caimital Plantation of 300 acres, reduced by later agreement to 288 acres; No. 2, 42 acres; No. 3, 10 acres, a total of 340 acres . . . Caballero proceeded under this contract . . . The surveyor made the usual chart of survey . . . and apportioned the excess in a manner not now in dispute . . . Thereupon the plaintiff brought in the District Court of Guayama a suit . . .; and in the complaint set up the proceedings just sketched, and prayed for a judgment to the effect, that the plaintiff was the owner of the 340 acres indicated in the record titles of parcels 1, 2 and 3 . . .' (Rec., pp. 39, 40; *A. Hartman & Co.* v. *Sánchez*, 12 F. (2d) 649, 652.)

"A better identification of the plaintiff's properties shown by their titles, by the map drawn by Caballero, and by the complaint, can not be either produced or conceived, as a reading of the opinion of said Circuit Court of Appeals does not leave the least doubt that that Court had no difficulty whatever in determining and identifying the 340 acres of the plaintiff, made up of her three properties, described in the complaint as containing 288, 42, and 10 acres, respectively.

"It may be easily concluded that the marshal, when proceeding to give possession to the plaintiff of the lands adjudicated to her as directed by the order appealed from, will not meet the slightest difficulty if he follows the description contained in the said order.

"As we shall see from the jurisprudence cited further on in this brief, the marshal may also, if he deems it necessary or advisable, refer to the map drawn by Caballero and secure the help of local residents and adjacent property owners. This, however, will not be necessary in view of the foregoing.

"During the pendency of the aforesaid appeals brought by A. Hartman & Co., the plaintiff, Mrs. Capó, disposed of the 10-acre parcel and also segregated from the Caimital plantation and sold to Marcelo Oben 248 acres which are described in detail by metes and bounds (Rec., pp. 48, 50, 53), there being left, therefore,

to said plaintiff the balance of the said main plantation known as Caimital, which balance is precisely the parcel of 38 acres, more or less, acknowledged as belonging to the plaintiff in the several judgments rendered in her favor, and to which parcel reference is also made in the map drawn by Caballero, which forms part of the record herein, when he surveyed parcel B–f 40.10.

"In regard to this segregation and sale of part of the Caimital plantation to Marcelo Oben, the appellant in its brief (p. 110) admits that it also offered in evidence the complaint and the answer in *Luce & Co.* v. *Rosario Cintrón de Capó,* a suit for injunction and other purposes, and it was alleged in that answer that the said Oben acted as trustee and on behalf of Luce & Co., purchaser *pendente lite* from Hartman & Co., and also promised to buy the balance of the Caimital plantation (38 acres, more or less) as soon as the plaintiff obtained possession thereof (Rec., pp. 87, 53; *Luce & Co.* v. *Cintrón,* 38 P.R.R. 477, 479).

"Inasmuch as 'the actual facts must prevail' (*Heirs of Cabrera et al.* v. *Aponte,* 29 P.R.R. 874, 880), and as there were only left for the plaintiff to recover the parcels of 42 and 38 acres, totaling 80 acres, acknowledged as belonging to her, in her motion to supply the omission in the judgment regarding the description of the properties, she alleged the facts as they existed, that is, by setting forth the particulars of the sale of the 10-acre parcel and of the segregation and sale of the 248 acres from the Caimital plantation (Rec., pp. 1–5). Consequently, the order appealed from decreed, pursuant to the pronouncements of the aforesaid judgments on appeal, the restitution and delivery to the plaintiff of the 42-acre parcel and of the 288 acres of the Caimital plantation, after segregating from the latter the 248 sold to Mr. Oben, as we have already stated (Rec., pp. 34–42).

"Therefore, the identification of the balance of the Caimital plantation is complete, since, after deducting the segregated portion described in the order of the lower court, the balance of the said Caimital plantation, even without referring to the map drawn by Caballero or to any other means always available to a marshal, can be located without the slightest difficulty."

By the 15th assignment it is maintained that the plaintiff herself reopened the case by moving for the amendment. The mere statement of this assignment is sufficient for concluding that it is without merit.

The 13th assignment reads as follows:

"The Court erred in not holding that the judgment in question was not then nor is now amendable, because the same is void as having been rendered without jurisdiction and resting on an extrinsic fraud perpetrated in the proceedings instituted to secure the same."

All the questions raised by the appellant in its argument under this assignment were determined in the action. The validity of the agreement was recognized. The titles were used as a basis. The survey was taken into account. All the facts relative to the inclusion of the estates within the perimeter were admitted, there still remaining a surplus for distribution. If the theory of the appellant were admitted, there would be no end to litigation.

A discussion of the 16th and 17th assignments compels us to supplement the recital of the facts made by us at the beginning of this opinion.

During the pendency of the action, the defendant, Hartman & Co., entered a notice of the complaint in the registry, conveyed to Luce & Co. Luce & Co. filed in the District Court of Guayama a suit for injunction, thereby reopening the controversy regarding the ownership of the land in question. A preliminary injunction was applied for and refused. An appeal was taken to this Court and the order appealed from was affirmed. See *Luce & Co.* v. *Cintrón,* 38 P.R.R. 477.

That being so, the existence of such suit could not and ought not to have stayed the present proceedings. In the opinion rendered by this Court it was stated:

"We have read the complaint and the answer carefully; we have examined the evidence which is mainly made up of the record of the former case which has been decided by three courts, and we have analyzed the facts in the light of the opinions delivered and the judgments rendered and by virtue thereof we find that the district court used properly its discretion in denying the injunction *pendente lite.*

"In 1906 this Supreme Court, through Associate Justice Figueras, in *Pereira* v. *Villafañe,* 10 P. R. R. 11, expressed itself as follows:

" 'Writs of injunction should be granted with great caution and only in cases where the reason and necessity therefor are clear. To grant an injunction hastily and without due consideration endangers the economic interests of the country, as well as the rights of parties and the well-established precedents of the courts.'

"Apparently the case now stated by Luce & Co. Ltd. was heard and decided in the action brought by the widow of Capó against A. Hartman & Co., and as Luce & Co. Ltd. acquired with knowledge of that litigation, as appears from their own pleadings, they are bound by the judgment rendered therein.

"The judgments of the courts are rendered for the purpose of being complied with. It is true that in this new case there is an allegation of fraud; but that is not sufficient to deter the course of adjudicated justice. The evidence introduced and the skillful argument of counsel for the appellant would be enough to raise doubts in the mind of the judge, but not in such a degree as to decide him to set aside even transitorily the *res judicata*."

The following citations from our own jurisprudence contained in the briefs of the appellee are applicable:

" 'The purchaser *pendente lite* is not a necessary party, because his vendor or grantor continues as the representative of his interests . . . is subject to the operation of a writ of possession if one is finally issued on a judgment in the suit . . . Persons who come into possession of land after an action is brought concerning it are presumed to come under the defendant and . . . go out under the writ of possession if the plaintiff recovers.' " *Paniagua* v. *District Court,* 34 P.R.R. 648, 650.

" '. . . a purchaser of property who buys pending a litigation concerning it, . . . is bound by the judgment in that suit the same as if made a party of record.' " *Lawton* v. *Rodríguez,* 38 P.R.R. 34, 46.

"Where *lis pendens* notice of an action claiming the title to a property has been entered in the registry of property, subsequent purchasers of the property can not allege that they had no knowledge of the suit and must abide by the result of the suit . . . he knew from the registry that the suit was pending and accepted the attending risk . . . If A brings an action against B to recover possession of land and files a *lis pendens* and during the pendency of the action . . . C purchases the land of B and judgment is afterwards rendered against B, C is bound and stopped by the judgment." *Jordán* v.

*Gómez et al.,* 18 P.R.R. 149, 152, 153; *Oliver* v. *Serra,* 34 *Decisiones de Puerto Rico* 950, memo. dec., July 16, 1925.

"The English text of section 91 of the Code of Civil Procedure does not exact as a condition for recording a *lis pendens* notice in the registry of property that the plaintiff or defendant, as the case may be, prayed that he be adjudged the owner of the property claimed, it being sufficient that the action affect the title or the right of possession of real property . . ." *Manrique de Lara* v. *The Registrar,* 23 P.R.R. 803; *Alvarez et al.* v. *Registrar,* 24 P.R.R. 400.

In the case at bar the issue is even clearer, because the injunction suit already referred to was decided on the merits by the district court also against Luce & Co. The judgment was appealed from and became final (*firme*) by reason of the dismissal of the appeal. *Luce & Co., S. en C.* v. *Cintrón,* 42 P. R. R. 590.

The briefs filed by both parties are quite lengthy. The appellant's brief consists of 122 printed pages and that of the appellee contains 100 typewritten pages. We have been unable to follow them in every particular. Reduced to its proper limits, the question involved becomes indeed simple. The amendment facilitates the execution of the judgment conformably to the issues raised and argued by the parties to the action and to the final adjudication made by the courts. Any ambiguity resulting from the reservation contained in the pronouncement of the judgment relating to the cross complaint is explained by the clear language preceding such reservation, to wit: "(*e*) That, as the allegations of the cross complaint have not been duly proved, the court dismisses it without prejudice to the rights of the party to defend in any other action." The reservation was something wholly ineffective, especially after the judgments of this Court and of the Circuit Court of Appeals.

The judgment appealed from must be affirmed.

Mr. Justice Hutchison concurs in the decision.